Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the deputy commissioner, with some modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
3. Continental Casualty is the carrier on the risk.
4. Plaintiff sustained a compensable injury on 24 March 1997.
5. Defendant-carrier prepared a Form 60 Employers Admission of Employees Right to Compensation on 18 April 1997.
6. Dr. Dennis Nicks assigned a 15 % permanent partial impairment rating to plaintiffs right hand.
7. The parties stipulated to the following medical records:
a. Wilmington Orthopaedic Group (14 pp.)
b. Work Returns, Inc. (27 pp.)
c. Wilmington Plastic Surgery Specialists (6 pp.)
d. Friedman Chiropractic (2 pp.)
e. New Hanover Regional Medical Center (21 pp.)
f. Coastal Rehabilitation Medicine Associates (2 pp.)
g. Wilmington Anesthesiologist (10 pp.)
h. MEDAC (3 pp.)
i. Northside Medical Group (12 pp.)
j. Coastal Neurosurgical Associates (4 pp.)
k. Physical Therapy Services of Wilmington (3 pp.)
l. Dr. Khakee North Carolina Disability Determination Service (5 pp.)
m. Jane Shipp, RN Shipp Medical Management (14 pp.)
8. The issues before the deputy commissioner were:
a. Is plaintiff entitled to payment of ongoing medical expenses, after reaching maximum medical improvement and securing two second opinions, as a result of his compensable injury of 24 March 1997;
b. Is plaintiff entitled to payment of temporary total disability from 11 August 1997 to 1 September 1998;
c. Is plaintiff entitled to payment of any temporary partial disability benefits; and
d. Is plaintiff entitled to any permanent partial disability benefits?
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a forty-one year old years of age. Plaintiff served in the U.S. Army, receiving an honorable discharge in 1992. Subsequently, plaintiff completed a truck drivers retraining program offered by the Veterans Administration. At the hearing, the deputy commissioner observed that plaintiff was in a dazed state, barely capable of testifying. Plaintiff admitted that he was on medication.
2. On 24 March 1997, defendant-employer employed plaintiff as a truck driver. Plaintiffs job duties consisted of driving a tractor-trailer for the customers of defendant-employer.
3. On 24 March 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. While plaintiff was driving a truck, one of the tires blew and plaintiffs right arm and wrist were jarred as he attempted to retain control of the truck.
4. The incident took place on Interstate 20 near Florence, South Carolina. The South Carolina Highway Patrol was notified. The Highway Patrol treated the incident as a mechanical failure and did not complete a report or dispatch an officer to the scene. Defendant-employer brought another truck to plaintiff and he continued his delivery.
5. On 31 March 1997, plaintiff contacted JoAnn Hurt, Operations Manager for defendant-employer. Plaintiff indicated that he was not able to work because he had pain in his arm and needed to see a physician. Defendant-employer completed a Form 19 Employers Report of Injury to Employee on 31 March 1997.
6. On 31 March 1997, plaintiff presented to MEDAC in Wilmington, North Carolina, where he was diagnosed with an acute right trapezius muscle strain and right wrist strain. Advil was prescribed for plaintiffs pain. Plaintiff was seen again at MEDAC on 4 April 1997 and 7 April 1997.
7. Plaintiff was referred to Charles L. Nance, Jr., M.D., an orthopaedic specialist, on 10 April 1997. Dr. Nance diagnosed a cervical strain, lumbar strain, and right wrist sprain. Dr. Nance continued to treat plaintiff conservatively from April 1997 until 12 September 1997. Plaintiff was able to return to work on 21 August 1997. Plaintiff reached maximum medical improvement with no permanent physical impairment on 12 September 1997.
8. In June 1997, Dr. Nance had referred plaintiff to Work Returns for physical therapy. Plaintiff first attended physical therapy on 11 June 1997. During the course of the physical therapy, plaintiff missed nine of the thirty scheduled sessions and was eventually dismissed for lack of motivation. Plaintiff was overly concerned about pain medication. After receipt of a prescription refill, plaintiff did not return to therapy. Dr. Nance eventually refused to refill pain medication. While at the physical therapy clinic, the physical therapist, Kevin Holland, observed that plaintiff wandered about "in a daze.
9. Dr. Nance referred plaintiff to Thomas E. Parent, M.D., also with Wilmington Orthopaedic Group, to determine if plaintiff had a triangular fibrocartilage complex tear. After examining plaintiff, Dr. Parent did not find a triangular fibrocartilage complex tear, a rotator cuff tear, or any other abnormality. Medically, there was nothing wrong with plaintiffs arm and he was not restricted in the use of his right arm.
10. Plaintiff, at the suggestion of his counsel, consulted Dennis Nicks, M.D., of the Wilmington Plastic Surgery Specialists, P.A., on 20 January 1998 for a second opinion. Dr. Nicks conducted nerve conduction studies and a bone scan. Dr. Nicks found no evidence of carpal tunnel or any other medical condition. According to Dr. Nicks, plaintiff was at maximum medical improvement and was capable of returning to regular work.
11. Dr. Nicks did not take plaintiff out of work in December because he could not find any abnormalities in plaintiffs bone scan. Dr. Nicks completed a work form, dated 5 December 1997, releasing plaintiff to light duty work.
12. On 20 January 1998, plaintiff was adjudged to be at maximum medical improvement. Dr. Nicks medical note reads:"
I have received Mr. Jacobs nerve conduction studies and there is no evidence of carpal tunnel or other problems noted on his nerve conduction studies. I know of no reason why he should be having persistent pain in his wrist. As I am unable to find any clinical correlation between his pain and any of the laboratory studies I have performed, I have no probable cause for his continued discomfort.
13. Dr. Nicks rated plaintiff with a fifteen percent permanent partial impairment to the right hand. As this rating contradicts Dr. Nicks conclusions in his own medical notes regarding plaintiffs condition, the rating is not given any weight.
14. Alleging severe pain on 16 January 1998, plaintiff sought treatment from James H. Pridgen, M.D. Dr. Pridgen prescribed Lorcet Plus and Valium on plaintiffs first visit. Dr. Pridgen requested an MRI of the cervical spine, which was normal. Dr. Pridgen also referred plaintiff to Thomas Melin, M.D., who requested MRIs of plaintiffs lumbar and thoracic spine. The MRIs demonstrated minimal degenerative changes at L5-S1, with no disc herniation or spinal canal stenosis. As of 28 April 1998, Dr. Pridgen was prescribing Prozac and Darvocet for plaintiff. At the time of the hearing before the deputy commissioner, plaintiff could not be certain which arm was injured, and he appeared lethargic and confused. Plaintiff was still receiving prescriptions from Dr. Pridgen and had the appearance of being overly medicated.
15. Plaintiff also treated with Dr. David R. Friedman, chiropractor, beginning on 13 January 1998. During the course of Dr. Friedmans treatment, he requested x-rays of plaintiffs cervical spine, which were essentially normal, showing only minimal joint hypertrophy.
16. On 4 March 1998, plaintiff treated with Steven B. Smith, M.D., of Wilmington Anesthesiologist. Dr. Smith conducted trigger point injections. At plaintiffs final visit on 26 March 1998, the trigger points were only minimally present. Plaintiff was not able to return to employment from 4 March 1998 through 20 March 1998. Plaintiff requested that Dr. Smith prescribe him additional Valium. Dr. Smith advised plaintiff to discontinue taking Valium. Dr. Smith recommended that plaintiff increase his daytime activities, especially arm and shoulder exercises, and prescribed Tylenol P.M. at bedtime.
17. Dr. A.G. Khakee performed a psychiatric evaluation on 6 May 1998 and diagnosed plaintiff with alcohol abuse. Plaintiff continued to consume alcohol in addition to his narcotic medication.
18. According to Dr. Pridgen, plaintiff was disabled from the date of his injury and continuing until the hearing before the deputy commissioner. The Full Commission does not find Dr. Pridgens opinions to be persuasive.
19. In an unrelated incident, plaintiff fell from a chair while sleeping and broke his right wrist on 2 November 1998. Plaintiffs wrist was treated by Dr. OMalley, who referred him to Dr. Rodger, an associate, for his neck and back pain.
20. Dr. Rodger performed X-rays on plaintiffs neck and low back. Dr. Rodger did not see any limitation of motion in plaintiffs neck or back and no instability, tenderness, or deformity in his neck or back. Based on plaintiffs oral history, Dr. Rodger diagnosed myofascial pain and gave plaintiff a rating of five % to the back. Plaintiff asserted that all his pain disappeared when he took Valium and that nothing else helped, but Dr. Rodger did not prescribe Valium for him.
21. Plaintiff has exaggerated his pain and symptomology for the purpose of obtaining medication. There is no objective basis for plaintiffs pain. Dr. Rodgers diagnosis and rating are not given any weight.
22. Plaintiff admitted at the hearing before the deputy commissioner that defendant-employer had work available for him at all times described herein. However, defendant-employer did not have any light duty work. Defendant-employers business was limited to providing drivers for over-the-road, long distance hauling.
23. As of 27 July 1997, plaintiff was able to perform one hundred repetitions of gear shifting and steering exercises without complaint, according to physical therapist Kevin Holland.
24. Dr. Nance released plaintiff to full duty work on 12 September 1997. Plaintiff did not return to work at that time. Plaintiff alleged that there was swelling around his wrist, which Dr. Nance was unable to verify upon examination.
25. Plaintiff returned to work briefly on 29 August 1997 and again alleged problems with swelling. Dr. Nance could not identify any swelling, and therefore, referred plaintiff to Dr. Parent. Dr. Parent also did not find any swelling around plaintiffs wrist. There was no objective medical reason for plaintiffs wrist pain.
26. Plaintiff was paid temporary total disability benefits from 24 April 1997 through 14 August 1997. Plaintiffs average weekly wage was $465.00, which yielded a compensation rate of $310.00.
27. Due to his injury, plaintiff was unable to work from 31 October 1997 through 23 April 1997, 15 August 1997 through 21 August 1997, and 4 March 1998 through 20 March 1998.
28. The greater weight of the medical evidence is that plaintiff has not sustained any permanent partial impairment.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on 24 March 1997. Plaintiff was totally disabled from 31 October 1997 through 23 April 1997, 15 August 1997 through 21 August 1997, and 4 March 1998 through 20 March 1998 and is entitled to compensation at the rate of $310.00 per week during that time. G.S. 97-29.
2. Plaintiff is not entitled to any permanent partial disability benefits as a result of injuries to his hand and back. G.S. 97-31.
3. Defendants provided the care rendered by the following providers: Physicians Assistant Dan Shapiro at MEDAC, treatment by Dr. Nance and Dr. Parent at Wilmington Orthopaedic Group, and treatment by Dr. Nicks, whom plaintiff saw at the recommendation of his counsel. Plaintiff obtained two second opinions pursuant to G.S. 97-27(b). Defendants are not responsible for any further outstanding medical expenses. Defendants are not required to pay for the treatment provided by Dr. Pridgen, as such treatment was not reasonably required to effect a cure, give relief, or lessen plaintiffs period of disability. G.S. 97-2(19), 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits in the amount of $310.00 per week from 31 March 1997 until 23 April 1997, from 15 August 1997 through 21 August 1997, and from 4 March 1998 through 20 March 1998.
2. Defendants are not responsible for any medical expenses incurred from treatment by Dr. Pridgen or for prescription refills for Valium and other muscle relaxant barbiturates because they are not reasonably required to effect a cure, give relief, or lessen plaintiffs period of disability.
3. A reasonable attorneys fee in the amount of twenty-five percent of all compensation due plaintiff is hereby approved for plaintiffs counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel.
4. Defendants shall bear the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER